ORDERED.

Dated: **February 19, 2020**

_____
Roberta A. Colton
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re | |
| FRANK LAPACE and ROSA LAPACE | Case No. 8:18-bk-05028-RCT<br>Chapter 7 |
| Debtors. | |
| | |
| ANGELA WELCH, as Chapter 7 Trustee, | Adv. Pro. No. 8:19-ap-00137-RCT |
| Plaintiff | |
| v. | |
| FRANK LAPACE and ROSA LAPACE, | |
| Defendants. | |

**MEMORANDUM OPINION**

The Chapter 7 Trustee seeks to deny Frank and Rosa LaPace ("Debtors") a Chapter 7 discharge because they did not disclose a pre-petition contract for the sale of their home and refused to turn over the proceeds of the post-petition sale of their home. This adversary proceeding was consolidated for trial with the Chapter 7 Trustee's objection to Debtors'

Homestead Exemption.[1]   On February 19, 2020, the Court entered an order overruling the Trustee's objection to Debtors' homestead exemption. (the "Homestead Order").[2]   The Court now considers the same evidence in the context of this adversary proceeding.  To the extent necessary, findings of fact and conclusions of law in the Homestead Order are incorporated into this Memorandum Opinion.

### **Findings**

Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 18, 2018 (the "Petition Date").  On Schedule A of their bankruptcy filings, Debtors disclosed their ownership of real property located at 3328 Kingswood Drive, Sarasota, Florida (the "Property").

Although Debtors owned and occupied the Property for 26 years before filing bankruptcy, they did not initially claim the Property as exempt on Schedule C.  But they also did not seek any advantage by failing to exempt the Property by claiming the increased Florida "wildcard" exemption for personal property.  The "wild card exemption" is only allowed when a debtor does not claim a homestead.[3]  In their Statement of Intentions, Debtors state that they intend to "Retain" the Property, and "Pay" the principal mortgage on the Property.[4]

In the Homestead Order, the Court found that Debtors' failure to claim the Property as exempt at the onset of the case was simply a mistake that was later corrected.

---

[1] Trustee's Objection to Amended Exemption (Doc. 52) in Debtors' Main Case, *In re LaPace*, 8:18-bk-05028-RCT ("Main Case").
[2] (Doc. 97) Main Case.
[3] Section 222.25(4), Florida Statutes, was adopted in 2007, to enhance the exemption for personal property for persons who do not own a home. *See In re Rogers,* 396 B.R. 100, 102 (Bankr.M.D.Fla.2008).
[4] (Doc. 1 at p. 56-57) Main Case.  There also was some confusion about a loan with OneMain Consumer Loan, and whether it was secured or unsecured. On July 10, 2018, Debtors signed a Reaffirmation Agreement for this loan. (Doc. 9) Main Case.  But the reaffirmation agreement was ultimately not approved by the Court.

But Debtors also failed to disclose any sales agreements or real estate agent/brokerage agreements on their Schedule G. In fact, the Property was listed by Mrs. LaPace months before the Petition Date. A contract to sell the Property also was secured just a few days before the Petition Date. And, when the Trustee conducted Debtors' 341 meeting on July 24, 2018, Mr. LaPace testified as follows:

> Trustee: and your home in Sarasota, are you going to keep it?
>
> Mr. LaPace: yes.
>
> Trustee: How long have you lived there?
>
> Mr. LaPace: 26 years
>
> Trustee: Have you refinanced at all in say the last three years?
>
> Mr. LaPace: No.[5]

These omissions form the core of the Trustee's objection to Debtor's Discharge.

In the Homestead Order, the Court made findings regarding Debtors' state of mind during the time relevant to omissions:

> Before the Petition Date, after the Petition Date and for the relevant time thereafter, Debtors were suffering significant marital strife. It is not necessary to detail their problems here. Suffice it to say that both Frank and Rosa LaPace credibly testified that they were under tremendous emotional and economic duress during this time and living day-to-day in a mental fog. Mr. LaPace was suffering physical ailments and was in denial about the end of his marriage. Mrs. LaPace was anxious for her marriage to end but was suffering with her own demons. On the Petition Date, neither Mr. LaPace nor Mrs. LaPace had any plan or idea of what was in their future other than they were going to file bankruptcy, and at some point, sell the house and separate. On the Petition Date they were still married, and both were still living at the Property.
>
> Indeed, Debtors were surprised and unprepared for how quickly the Property sold. The sale closed on July 26, 2018, a little more than a month after the Petition Date. The Property was sold without notification to the Trustee or approval of this Court. The net sales proceeds totaling $95,717.17 (the "Sale Proceeds"), were deposited in the joint bank account that Debtors maintained

---

[5] Debtor's original counsel was present at the 341 meeting and instructed Debtors not to volunteer information. It is unclear from this record whether the attorney knew about the contract for sale of the Property.

throughout their marriage. They both continued to live in their home until the sale closed. They separated after the closing, but their divorce is not yet final.

The sale closed on July 26, 2018, without notification to the Trustee or approval of this court. The net sales proceeds totaling $95,717.17 (the "Sale Proceeds"), were deposited in the joint bank account that Debtors maintained throughout their marriage.

On November 16, 2018, the Trustee's counsel demanded that Debtors turnover the Sale Proceeds to the Trustee within fourteen days (the "Demand Letter"). The Demand Letter was appropriate because the Property was not claimed as exempt in Debtors' original bankruptcy schedules. That same day, Debtors filed an Amended Summary of Assets and an Amended Schedule C (the "Amended Schedules"). The Court struck the Amended Schedules from the record twice due to procedural deficiencies. On November 29, 2018, Debtors successfully filed the Amended Schedules and claimed the Property as exempt pursuant to Fla. Const. art. X, § 4(a)(1); and Fla. Stat. Ann. §§ 222.01 and 222.02, with a claimed exemption value of $152,146.[6]

### Discussion

Section 727 of the Bankruptcy Code governs the discharge of a debtor in a Chapter 7 case. Generally, an individual Chapter 7 debtor will receive a discharge unless a plaintiff establishes one of the specific exceptions to discharge found in § 727(a). In evaluating these exceptions, Courts recognize that the complete denial of a discharge is a harsh sanction.[7] Consequently, exceptions to discharge are construed strictly against a plaintiff and liberally in favor of a debtor.

The Trustee seeks to deny Debtors a discharge under § 727(a)(2)(B) and § 727(a)(4)(A), which state as follows:

---

[6] (Doc. 49) Main Case.
[7] *In re DiVenere*, 3:11-BK-9122-PMG, 2014 WL 1883998, at *2 (Bankr. M.D. Fla. May 8, 2014).

**§ 727. Discharge**

(a) The court shall grant the debtor a discharge, unless—
...
(2) the debtor, *with intent to hinder, delay, or defraud a creditor* or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
...
    (B) property of the estate, after the date of the filing of the petition;
…
(4) the debtor knowingly and fraudulently, in or in connection with the case--
    (A) made a false oath or account;

11 U.S.C. § 727(a)(2)(B), (a)(4)(A)(Emphasis supplied).

### *Section 727(a)(2)(B)*

The purpose of § 727(a)(2)(B) is "to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets."[8] To meet the initial burden under § 727(a)(2)(B), a plaintiff must show, by a preponderance of the evidence, that: 1) there was a transfer, 2) after the filing of the petition, 3) of property of the estate, 4) by the debtor with the intent to hinder, delay, or defraud his creditors.[9]

The first two elements are met because Debtors sold the Property after filing the bankruptcy petition.

The third element requires that the post-petition transfer involve property of the estate. "Upon filing bankruptcy, all of the debtor's interest in property, including any potentially exempt property, becomes property of a bankruptcy estate under section 541."[10] However,

---

[8] *In re Cutaia*, 410 B.R. 733, 738 (Bankr. S.D. Fla. 2008)(quoting *In re Davis*, 363 B.R. 614, 619 (Bankr. M.D. Fla. 2006)).

[9] *Petland, Inc. v. Unger (In re Unger)*, 333 B.R. 461, 470 (Bankr.M.D.Fla.2005)(citing *Colonial Bank v. Johnson (In re Johnson)*, 301 B.R. 590, 596 (Bankr.N.D.Ala.2003)).

[10] *In re Gatto*, 380 B.R. 88, 93 (Bankr.M.D.Fla.2007).

5

once a debtor's claim of exemption is allowed, exempt property is considered withdrawn from the estate.[11]

Here, the Defendants did not initially claim an exemption for the Property, so the Property was property of the estate at the time of the transfer. In the Homestead Order, this Court ultimately concluded that Debtors' amended schedules related back to the Petition Date and allowed the Debtors' homestead exemption. But the exemption was not allowed until the Homestead Order was entered on February 19, 2020. So the Trustee is correct that the Property was property of the estate when it was sold post-petition and thus, the Trustee has satisfied the third element of t§ 727(a)(2)(B).

The last element requires the Trustee to prove that Debtors acted with the intent to hinder, delay, or defraud their creditors. "Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct."[12]

The Court's findings as to Debtors' state of mind in the Homestead Order weigh in favor of allowing Debtors a discharge on this element of the claim. At the beginning of their bankruptcy, both Debtors were in physical, emotional and economic distress and were not focused on the requirements of their bankruptcy. Both Debtors 'credibly testified that the did not intend to hinder, delay or defraud any creditor or the Trustee.

Importantly, Debtors did not conceal the Property in their bankruptcy schedules, just the brokerage agreement and the contract for its sale. The Property, the debt associated with the Property and their intent to keep the Property were not concealed. Though the Property is

---

[11] *In re Quezada*, 368 B.R. 44, 48 (Bankr.S.D.Fla.2007) (citations omitted).
[12] *In re Jennings*, 533 F.3d 1333, 1338 (11th Cir. 2008); see also *In re Krehl*, 86 F.3d 737, 743 (7th Cir.1996) ("Because direct evidence of a debtor's intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct.")

6

not claimed on their original Schedule C, Debtors' "Statement of Intentions," filed simultaneously, state their intent to retain the Property and pay their mortgage.

No doubt, the contract for sale of the Property should have been disclosed on Schedule G, but evidence was presented that Debtors' had been trying to file bankruptcy for many months and the contract was obtained just days before the Petition Date. No evidence suggests that its omission from Schedule G was done with the intent to hinder, delay or defraud and creditor or the Trustee. Debtors' failure to list the brokerage agreement as an executory contract on Schedule G, again a mistake, was not intentional and is simply not material or relevant to any potential creditor recovery. Accordingly, nothing in Debtors' schedules amounted to a concealment of property of the estate with the intent to hinder delay or defraud creditors or the Trustee.

As for Mr. LaPace's testimony at the 341 Meeting, his answer to the Trustee's initial question about the Property was not accurate. He should have disclosed that the Property was about to be sold. But, frankly, the Trustee's question, for what on the face of the original schedules was non-exempt property, was a bit ambiguous and not particularly probing. Mr. LaPace certainly intended to "keep" the Property from the Trustee. Mr. LaPace's cryptic responses also were made on instructions from counsel not to volunteer information. These instructions, though unfortunate, when coupled with Mr. LaPace's emotional state, does not amount to a concealment of the Property with the intent to hinder, delay and defraud creditors or the Trustee.

Finally, as to the July 2018 sale of the Property -- without notice to the Trustee and without authorization of this Court -- someone clearly was asleep at the wheel. But, on this record, the Court cannot find that Debtors acted with the intent to hinder, delay or defraud

creditors or the Trustee. Indeed, their conduct is consistent with this Court's findings in the Homestead Order that Debtor's did abandon their homestead and that the Property was not an asset available for creditors.

In short, the sale of the Property should have been disclosed and approved by this Court. But the Property itself was not concealed, and the missteps that occurred here were not intentionally orchestrated by Debtors with the intent to hinder, delay or defraud creditors or the Trustee.

### *Section 727(a)(4)(A)*

The purpose of § 727(a)(4)(A) is to ensure that "that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs."[13] Under § 727(a)(4)(A), discharge may be denied when a false oath or account was knowingly and fraudulently made and related to a material fact.[14] A false oath is material when "it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property."[15] However, because § 727(a)(4)(A) aims to "prevent knowing fraud or perjury," the objection should not apply to "minor errors."[16] As the court stated in *In re Dupree*, "[t]here is a difference between a debtor who is trying to hide assets with a false oath or material omissions in his Statement of Financial Affairs, and a debtor who, through inadvertence, mistake, or ignorance of the issue of materiality in his disclosures, may omit certain assets in his original Statement of Financial

---

[13] *In re Sadler*, 282 B.R. 254, 264 (Bankr. M.D. Fla. 2002)
[14] *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984).
[15] *Id.*
[16] *In re Dupree*, 336 B.R. 490, 494 (Bankr. M.D. Fla. 2005) (quoting *In re Wills*, 243 B.R. 58, 63 (9th Cir. BAP 1999)).

Affairs."[17] Thus, omissions or nondisclosures are analyzed to determine whether they were part of a scheme to retain assets for the debtor's own benefit at the expense of creditors.[18]

The evidence presented at trial leads to the conclusion that Debtors committed unintentional omissions and ultimately non-material mistakes in their schedules. Although both Debtors acknowledge that, in retrospect, their failure to disclose the contract for the sale of their home was wrong, their testimony was candid and credible, and the Court is persuaded that they did not knowingly and fraudulently commit fraud or perjury as to any material fact.

Similarly, as discussed above, the Court does not find that Mr. LaPace's testimony at the 341 Meeting was knowingly and fraudulently made, so as to justify a denial of his bankruptcy discharge. The Trustee's best evidence on this point was the proximity between the 341 Meeting and the closing of the Sale of the Property. And, if Debtors had not disclosed the Property, or if they had not disclosed their intent to keep the Property in their Statement of Intentions, this fact would be more compelling. But the Property was disclosed and initial omission on Schedule C was inadvertent and ultimately corrected. Although Mr. LaPace should have told the Trustee about the upcoming closing, his affirmative response to whether he was going to "keep" his home was neither intentional nor fraudulent. Moreover, given her emotional state, and the state of her marriage, Mrs. LaPace's silence at the 341 Meeting was neither knowing and nor fraudulent.

Accordingly, a separate judgment will be entered in favor of Debtors.

Service of this Opinion other than by CM/ECF is not required. Local Rule 9013-3(b).

---

[17] *Id.*
[18] *Id.*